Amen Good morning, may it please the Court. My name is Frank B. Hugg, and I represent Petitioner Container Stevedoring Company. I would like to reserve two minutes of time at the end for rebuttal. Well, whatever you have left of the clock when you sit down will be yours. Pardon? Look at the clock. Yes, thank you. And whatever you have left will be yours when you sit down. Thank you. While this case is entitled Container Stevedoring v. Stevedoring Services of America, the real subtitle of this case is The Battle of the Bulging Disc and What the ALJ Did With Them. Namely, the record is replete with a conflict about which employer and which injury caused the need for the ultimate permanent disability under the Longshore Act claim and the need for further treatment. The ALJ carefully evaluated that evidence, which included three possible options of these bulging discs. Dr. Sanders, a neurosurgeon, one of five physicians who testified live before the judge, concluded that there was a need for further surgery at an adjacent lower level of the spine, C56-C67. Whereas the defendant, Stevedore's expert, Dr. Von Rogoff, said no, that's not the issue and area of treatment for this injured longshoreman. The treatment area should be at the L5-S1 disc, the so-called SSA disc. I may be missing something, but as I understand, the issue before us is whether there was error in the first decision of the board. That is correct. That's the one that we're focusing on. That is entirely correct, Judge. And as I understand, the board is distinguished from the immigration setup. The board here can make no findings of fact. Precisely. The board is not entitled to de novo review of the facts, only determine whether or not the decision is supported by substantial evidence. So I suppose the issue is whether or not in this decision we can properly say that the board was, in fact, refinding the evidence, or whether, as a matter of law, it was sending back for reconsideration. That's the issue before us. That's right, Judge Wallace. And it's the ---- So could you show me what's the best language in the complaint which shows us, to your satisfaction, that the board is refinding the facts, as distinguished from sending it back on an issue of law? That's why I ---- yes, Judge Wallace. That's why I started with the medical discussion of the disks that are involved. The trial judge, who had the chance to see the witnesses, listen to the doctors, the lay witnesses, listen to the expression of the expert opinion, decided that Judge ---- that Dr. Sanders had it correct. He successfully treated the man, relieving some of the symptoms earlier, at one level of the cervical spine, and decided to go to another. The board, instead of respecting the finding of the judge, said, wait a minute, that may be true, but there's other evidence that supports, other disks may have been involved, and the ALJ did not take into consideration the evidence. That's not the board's task. The board's task is not to reevaluate the evidence. The statutory standard under 921B is that the findings of the ALJ are conclusive. Yeah. The board went outside of that and said, well, you didn't take into account all the other evidence. There's always two sides to a long, short case. Let's look to the actual decision itself. On page 3 of the decision, I'll let you get that. It's tab A of the Employer's Excerpt of Record. Page 3, the excerpt of Record 23. At the first full paragraph, we hold the administrative law judge in determining that the claimant's present disabilities related to his initial injury while working for SSA failed to properly apply the aggravation rule to the evidence of record. Now, it seems to me, unless there's something else in the opinion, it seems to me that they're accepting the evidence of record, but they're saying, wait a minute, you didn't apply the correct legal standard. Now, go back and do it right and apply the evidence with the correct legal standard. If that's true, if that's true, then we should affirm. But if it's not true, we should reverse. So where in this opinion do you – what is the language in the opinion that shows that they were refinding the evidence rather than standing it back for a different legal standard? It's my – Judge Wallace, my suggestion is that they were using the issue of the two-injury rule as a pretext to ignore the findings of what the judge did. There's always two sides to every case. For example – Where would I find – I'm going to write an opinion that said it was a pretext. Well, not a pretext. And then I have to – Pardon me, that's the wrong word. They did not correctly follow the substantial evidence rule. Now, I can argue what the two-employer – the issue of law is, namely, the two-employer rule, and there are many facts on that. This Court knows the history of the cases that have led to the two-employer rule. The Court characterizes it – the BRB characterizes what they were doing as review of an issue of law. Yes. The underlying issue of law is – depends upon a factual determination by the administrative law judge of which employer is responsible under the test of the initial injury and the natural progression of that injury, notwithstanding subsequent injury. And there's some evidence for that, that that's – the initial injury was the cause of it. Versus whether there was a subsequent injury, which is the test of law the Court's asking me about, I believe, whether or not there was a subsequent injury that combined, aggravated, or accelerated. Now, the Board said that it was, in effect, giving lip service to examining that question of law, but, in fact, that's not the Board's – the Board does review for errors of law, as does this Court, but this isn't an issue of law. This was an issue of evaluation of evidence. So if I understand your answer correctly, where the Board said here, fail to properly apply the aggravation rule to the evidence in record, if I understand your argument, when they did that, they were saying the evidence shows aggravation, and therefore they've reexamined the law? The Board said there's some evidence of aggravation, but that's not what the Board's duty is. The Board's duty is not to see if there's another pile of evidence out there, there are other disks that would support the notion that there was a second injury. The judge found there was no second injury. The Board – I'm sorry. The judge found there was no second injury, and the Board, rather than respecting the finding of the judge that there was actually not a second injury in this case Let's get down to the actual facts of what happened. I think this much is undisputed. He has a prior injury. He's now on the second job. He stands up. He steps out of his booth, and his leg buckles under him. Buckles is a little strong. I think he had some sharp pain, pain that he had had all along. It was a buildup of pain, and in his own words, that was no accident. For three weeks, it was not mentioned to any of the – any of the treating physicians. He called Kaiser a week later to set up an appointment. The patient used the word late relapse. I'm sorry. Are you still correcting my description of what happened? Yes. But I'm going on with how it – I apologize. The leg did not buckle. He felt sharp, shooting pain. And he didn't fall to the ground? Did not. And he wasn't – it was not the case that he wasn't able to stand on the foot afterwards for quite some time? No. He wasn't put on – No. That's – no. There is other testimony later, but through the record at this point in time, the original decision and the judge, he felt a sharp pain as he stepped out and turned. That is correct. Okay. And so the – in your view, then, the fact that he stood up and he tried to put weight on the foot was just contemporaneous. It would have happened if he'd been sitting down. It would have happened if he'd been lying down. What he was actually doing had no effect on the aggravation of the pain at that point. I agree with the implicit – the implied theory that anything goes wrong with a human frame can be an injury. This judge, however, did not find that to be an injury. This judge found that while he discussed it in some contexts that are not perhaps proper, this judge found and relied upon the doctors who said there was no injury. And that's why the trial judge's decision that whatever happened, the turn, the step out of the little booth was not an injury, is so important and reserved to the trial judge under the substantial evidence rule. I can still see one of the doctors who testified whom the judge relied upon. It's been 11 years since this doctor testified, Dr. Preininger. He was my expert. I was very nervous and worried about how he was going to characterize the very incident the Court has asked about because Dr. Preininger wasn't a very good witness in his deposition. By the time he got to trial, he was full of good comportment. He was calm, academic, and delivered an excellent explanation. He said, Judge, it really wasn't an injury. Nothing really happened. He got over it. He may have had a slight flare-up of pain he had all along. This trial judge reached that decision that the incident you're asking about where his leg weakened, felt a sharp pain, this judge found that that was not an incident or an injury. And so on that basis, he correctly applied the two-employer rule and the decision of the BRB should set aside because it had no province or no reason to set aside. Do you have the excerpts? I do. Okay. Why don't you look at page 95 of the excerpts, page 186 of the transcript? Of mine or? The thing that's called excerpts, the one that has Fang behind it. I have 95. Okay. Look at page 186, which is in the bottom left-hand corner, starting line 9. Page 188 of the condensed transcript? Yeah. Yes. I have it. Okay. Do you remember the days of accidents? This is Mr. Blue talking? This is Mr. Blue being questioned, correct. Yes, I remember that. It's a little blanked out here. Container stevedore. Answer, there was not an accident. Did you report an accident to container stevedore? We filled out, quote, an accident report, unquote. Yes. Did you report an injury to your supervisor? My supervisor is my superintendent. When you say report an injury, what do you mean? I told my superintendent I had a flare-up or something to that sort. Yes. Isn't there someplace where he said that he heard the popping? Yes, there is. The word pop is in the transcript, no doubt about it. And that his leg gave out? That's correct. So there's a weakness, there's a pop, a knife-like pain, what he'd felt all along. But so what? I mean, if it's this Court doesn't examine, this Court doesn't determine whether or not there was an injury. This Court reviews for issues, de novo issues of law and determine whether or not the board applied the correct statutory standard that the findings of the ALJ are conclusively presumed correct. The judge discussed for seven or eight pages this incident that it did occur. We don't dispute that he got up, stepped, turned out of the booth, and felt pain. But I don't know how... Did he say his leg just went out? Yes, that's correct. What does that mean? It means he had some pain radiating down from one of his discs of unknown cause into his low back, into his radicular symptoms down his leg. Does it mean he had an injury? If he had those ongoing leg complaints, as the trial judge found... But how can your leg go out unless you have actually stepped on it? I mean, he must have stepped on it for it to go out. He turned, stepped out, and put weight on his leg. He put weight on his leg, and the leg goes out. Judge, there are cases where sneezing, where the act of urination has been found to be an injury. It can be anything goes wrong with the human frame is an injury. I agree 100 percent. Something happened at the lumbar level of the spine, which is the only injury that was involved in the container stevedoring incident. And your position is it wasn't caused by the fact that he put weight on that? No, no, no, not at all. I agree that that's what happened. He put weight on it. He puts weight on it, and that causes the aggravation. That's correct. But, oh, I'm sorry, not aggravation. It caused a flare-up, a buildup. He'd had that pain every night that he worked. It's a flare-up, but not an aggravation. Well, in the way it works among the practitioners, if you get the judge and everybody to say flare-up, then it all goes back to the first injury. I mean, that's how what this two-injury rule has become. But, again, that's not what this appeal, I would hope and suggest, is about. Because these were the conflicts of how to characterize that injury that were before the trial judge. The BRB didn't like it that the judge didn't fully consider other evidence, other discussions by other doctors. And, indeed, there always is, as we all know as we grow older, the explanation of what's wrong with the human spine is multifactorial. But this judge chose to rely upon Dr. Sanders, who initially treated. He chose, this judge chose to rely upon Mr. Blue and found him credible that he had progressively worsening back symptoms. I don't dispute that there was an incident involving the lumbar spine. I deny whether, the Petitioner denies that that was an injury within the meaning of the two-employer rule sufficient to transfer liability. Thank you. I will hear from the other side. Thank you. I'll come back for my two minutes. Good morning. My name is Laura Bruniel, and I'm arguing for the first injury, SSA in Homeport. I'd like to start by answering Mr. Justice Wallace's question and directing you to the record, because this is a case where the Benefits Review Board remanded because of three reasons. There were two conspicuous errors in law. And if you look at page 23 of the exhibit's bottom paragraph, one of the 23 of what? Of the excerpts, I'm sorry. Petitioner's excerpts. It's the decision of the Benefits Review Board. And it's page 3 of their decision. You know, they couch it in terms of errors of law, but to me it looks like they're just second-guessing the ALJ on the facts. Well, no, I'm – there is an error. There are two errors of law. All right. Let's talk about it. The first is that the administrative law judge said this is not a second injury because it could have happened at home. And if it could have happened at home, I shouldn't shift liability to a second employer. Well, that's not the law. The law is if it happened at work, regardless of whether it could have happened at home, it's an industrial injury. In fact, that's the nexus of every industrial injury. I thought what the ALJ was trying to say was that there wasn't anything about the circumstances of the injury that caused the aggravation, that this is something that would have happened regardless of where he was or what he was doing. This was just a continuation of the existing injury. Well – I think that's what he was trying to say. He may have been, but what he actually said in his decision at page 16 was the fortuitous fact that it happened at work, at the lightest job available, not only on the waterfront but probably anywhere, should not shift liability. But that is an error of law, and the BRB had no – Well, unless what he's really saying is really nothing happened at all, and the fact that temporarily this happened at work really makes no difference because this really wasn't an incident. There's nothing that happened. It was just a condition, and in the body it happened to get worse with time. He happened to be at work. He could have been at play. He could have been asleep. He could have been doing anything. This was nothing that was a consequence of any circumstances of where he was. It was just the body having a continuing effect of an earlier injury. I understand the point, but I believe that it's been well-established that if something goes wrong with a human frame and it's at work, then we have the potential for an industrial – If it's an aggravation. If it's an aggravation. If it's simply – I mean, let's say, for example, you're at work and your appendix bursts, and it's clear that appendices being what they are, once you have an inflammation, it doesn't matter what you're doing or where you are, the body just progressively gets worse, and the inflammation gets worse, and you could say, well, you know, the fact that he happened to be at work had nothing to do with it. It was just the body going through progressive changes as a result of the initial injury, the thing that caused the inflammation of the appendix in the first place. I mean, just to give you an example, and what I thought the ALJ here was trying to say, perhaps not as artfully as we would have liked, is that this was not anything at all external. This was all internal to the body, and that it doesn't matter where he would have been or what he was doing, none of that had anything to do with it, and therefore, there was no aggravation. This was just a progression of the body dealing with an existing injury, which strikes me as something that's within the prior effects province to determine. If that is the evidence, it would be. But the evidence in this particular case. You had one doctor who said that. Well, one doctor who said he was he severely exacerbated the injury, and he got over his acute symptoms. I think you're referring to Dr. Prininger. But let's go back and review what actually happened on that day, then. Mr. Blue was working in and had been working with no time off work, no medical treatment, no medication, did not seek the services of the doctor for nine months, and he stepped out of his clerk's booth, twisted, stepped down a two-inch step, felt a pop in his back, knife-like pain, and his leg gave out. So if we had any evidence that Mr. Blue was feeling a knife-like pain, pops in his back all along, then maybe there is a natural progression. But it's hard to recognize a or distinguish from a natural progression and a second injury if you don't have the basis for that. One of the reasons that the judge relied on Dr. Sanders, he said, the judge said, was because of his remarkable success in treating Mr. Blue. It doesn't seem consistent that he would say that Dr. Sanders had a remarkable success in treating and at the same time that Mr. Blue was getting progressively worse all the time. It seems it would be either one or the other. But the poor trial judge has no opportunity in those circumstances to say you're wrong or you're right. He has to listen to all the testimony, and after he gets through, he has to make some determinations. Now, you say there are two reasons. When we look at the two reasons that there are explained in page four and five, how can you suggest that in their decision they weren't evaluating the evidence? Because when they start talking about that he made a problem because he said he had a problem because he found the episode constituted neither a second injury nor a continuing trauma, and he stated the fact an incident in question fortuitously occurred, they say that's a problem. Then they say, however, in making such a determination, he relied on the evidence. He relied on Dr. Sanders. He relied on balance. He relied on perjury. He relied on all these particular situations in making his determination. Then they say he erred to properly apply the aggravation rule because it may not have been exactly the severity was not a good thing. But then they go ahead right in their same opinion and say, but there was evidence suggesting that that was exactly the decision that should come. So if I look at this, even if I say that they were commenting on all of this evidence and finding he didn't apply it right, the way they suggested he didn't apply it right is because they didn't weigh the evidence the way the board wanted to rather than the If he had no evidence to rely on, then they have a reason to say he ought to do it again. But they have no way to say it. If he has evidence in the record, then they are supplanting his determination with theirs. I see your point on the one hand. On the other hand, part of the BRB's requirement is to see if the record is supported by the And whereas here the judge does not comment on any of the conflicting evidence given by the same doctors on whom he has relied, the Benefits Review Board has no way to determine whether the judge recognized the existence of that evidence or appreciated its significance. So they sent it back to him and said, account for this. Resolve these conflicts. But the problem is, is that when you're the trial judge and you're trying to come up with a decision based on the evidence in front of you and you rely, you've got these standards you've got to apply. And so you apply the standards and then you set out the evidence. I mean, it isn't as if he didn't set it out or they wouldn't have been able to make reference to it in their decision. And then you set out the evidence you're relying on in applying the standards that you know the board's going to look at, for them to then suggest that because he made it on that evidence, they're really saying, we think other evidence is better. So go try it again. That isn't appropriate for a board to do. The board is appropriate to look at the evidence. And if he has substantial evidence sustaining his determination, regardless of whatever evidence there is, it's over. I think the Benefits Review Board was saying the evidence that you relied on doesn't support your conclusion that there was no aggravation. You applied the wrong standard. You applied it as if you were looking at an injury by itself and not an aggravation. Well, that's very easy when you want to suggest that you see other evidence in there that you think is better, so you want to throw that in. But the problem is that I have a substantial evidence rule. And I wasn't always on this court. I was in the district court. And when I have substantial evidence in front of me for this court to suggest that, I have rules to apply. And so I then apply them. But they don't like the evidence I weighed. They want to weigh their own evidence. That's not correct. They have no right in my business. And that's what happened here. It may be. Well, I don't read the BRB's decision that way. I read it as saying the evidence that you selected doesn't support your conclusion. And besides that, you applied the law incorrectly. If you apply the law incorrectly, the evidence that you support, that you select to support that incorrect application doesn't matter because the principle of law is wrong in the first place. And I think that's why they sent it back. That's why they said they sent it back to the administrative law judge, to account for evidence and to apply the aggravation rule. Thank you. Thank you. You're way out of time. We'll give you a minute for rebuttal. The Ninth Circuit, another panel of the Ninth Circuit and Foundation Construction said they wanted to establish a bright line for the two employer rules. I suggest, I ask this court to make it a beacon to set aside the decision of the board and give for the West Coast community, which is very closely watched across the country, for two injury cases. The Ninth Circuit leads the nation in the development of law in this area. If you're just telling us this is an important case, you don't need to worry about that. We consider it an important case. It seems to me the question that is before us is what was the intent of the board? You could read the board's opinion as saying you've left out this, these facts. You have not commented upon these facts. When you go back and test, retest the entire case under the proper standard, we want you to take those into consideration, either accept them or reject them. That is it entirely. That is one interpretation which is consistent with the last sentence of the opinion. The other interpretation is that the board is just using, what was it, a phony sham or something? That was a poor choice of words. Well, okay. But I'm not brief. I said lip service. And that really concerned about what test the ALJ has applied. They just came up with this because they wanted to redo the evidence. That is another possibility. But the question really is, is what was the board trying to do? We would have to find, if we agreed with you that they were redoing the evidence, that the board was not, was being disingenuous when it said that he applied the wrong test and asked to go back for the right test because they were really reviewing the evidence. We have to say the board was disingenuous. I have no, I harbor no ill will towards the board and the professional. I shouldn't have used anything that was pejorative. I just mean exactly what you said. They were redoing the evidence. But the beacon I'm asking for is. Well, isn't that the point? What they said they were doing is the ALJ applied the wrong test. And we want him to go back and apply the right test and review all of the evidence and see how he comes out. That's correct. That's one way of looking at it. The other way of looking at it is, no, tests had nothing to do with it. The board was just telling the ALJ how to find the evidence. We have to decide which it is. The beacon that I'm suggesting from the court is a published decision in which it is recognized by the Ninth Circuit that indeed a first employer can be liable. All of the other decisions from this court have resulted in the second employer always being liable in the published body of cases that are out there. If this Court is leaning towards what I think is the BRB exceeding its powers, engaging in de novo review, and the trial judge was correct in sifting through this huge body of evidence and finding substantial evidence, then this is the opportunity to clarify yet again stringent. And if, in fact, we come up with the opposite view, it should be published also. Well, then it might be good for nonpublished status. Well, then your argument, your argument. In that way, we'll have what we've got. I just have to point out, counsel, that that's a comment or an argument that's completely result-oriented. We don't do that. We publish when it's publishable. I understand, but I think the point is that it would be inappropriate for us to do it one way if they win, another way if they lose. I understand, Judge. I was being slightly too much touch of humor. Thank you. Thank you, counsel. The case is now going to stand for a minute. We are adjourned. All rise.
judges: Kozinski, Wallace, Smith